UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
SHUITHOL MOY,                      :

             Plaintiff,       :
                                         15cv32
       -against-                  :
                                         OPINION & ORDER
SECRETARY THOMAS E. PEREZ,         :

             Defendant.       :
----------------------------------X
WILLIAM H. PAULEY III, District Judge:

        Shuithol Moy brings this Title VII action alleging that his employer, the Department of Labor ("DOL"), discriminated against him based on his sex.[1] The DOL moves for summary judgment, asserting that Moy has failed to proffer evidence from which sex discrimination could be inferred. DOL's motion for summary judgment is granted, and this action is dismissed.

## BACKGROUND

        Moy, a Chinese-American man, is a Wage and Hour Investigator for the Wage and Hour Division of the New York District Office of the Department of Labor. (August 24, 2016 Declaration of Shuithol Moy ("Moy Decl."), ECF No. 68, ¶ 3.) In February 2011, he applied for a promotion to the position of Assistant District Director in the New York District Office. (Moy Decl. ¶ 4.)

        Six applicants for the Assistant District Director position were qualified for

---

[1] In the Amended Complaint, Moy also alleged that the DOL retaliated against him and engaged in race and sex discrimination by promoting Dinah Solivan (a Hispanic woman) to the position in 2010. (Moy Decl. ¶ 4.) This Court dismissed Moy's retaliation claim for failure to state a claim and dismissed the 2010 failure-to-promote claim for failure to timely exhaust administrative remedies. See Moy v. Perez, No. 15-cv-32, 2015 WL 9256991, at *4 (S.D.N.Y. Dec. 4, 2015). The surviving claim is for sex discrimination in connection with the 2011 promotion.

interviews by DOL's human-resource specialists. (Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Undisputed Facts ("St."), ECF No. 79, ¶ 8.) District Director Maria Rosado, a Hispanic woman, was the selecting official for the position. (St. ¶ 3.) Rosado reviewed the application packages for each candidate, including the applicants' responses to multiple-choice questionnaires about work experience, a résumé, and the applicant's most recent performance evaluation. (St. ¶ 7.)

Rosado conducted the interviews, and Regional Administrator George Ference and Deputy Regional Administrator Carl Smith were present for some of them. (St. ¶ 10.) During Moy's interview, Smith and Ference did not ask questions. (St. ¶ 10.) Although Smith and Ference were Rosado's supervisors, she decided whom to promote. (St. ¶¶ 11–12.)

Rosado, Smith, and Ference agreed that the best candidates were Debbie Lau, a Chinese-American woman, and Jeremy Rosenman, a man.[2] (St. ¶ 11.) Rosado found that Lau was efficient, completed assignments with little supervision, assisted other investigators, trained newer investigators, and demonstrated knowledge of managerial skills during her interview. (St. ¶ 13.) By contrast, Rosado and Ference agreed that Moy gave off a negative impression during his interview. (St. ¶ 44–45, ¶ 47.) Rosado's notes from the interview reflect a discussion with Moy regarding a feedback form for employees called a "performance improvement plan." During the interview, Moy opined that the forms were merely used to punish underperforming employees. Rosado felt that Moy's response reflected a "negative attitude about management." (St. ¶ 48.) Moreover, Ference was "not overly impressed with [Moy's] potential for leadership"

---

[2] The parties' motion papers do not identify Rosenman's race. (See Transcript of Sept. 8, 2016 Oral Arg. at 5:24–6:5.)

2

based on Moy's "overall demeanor" and "presentation," and was concerned about his "ability to connect, to relate to [him] or the other people that were doing the interview," a skill that was "critical for a manager." (St. ¶ 47.)

After the interview process, Rosado promoted Lau to the Assistant District Director position. (St. ¶ 11.) Moy alleges Rosado's promotional decision constitutes sex discrimination.

## LEGAL STANDARD

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Davis v. Blige, 505 F.3d 90, 97 (2d Cir. 2007). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Once the moving party has made the initial showing that there is no genuine issue of material fact, the non-moving party cannot rely on the "mere existence of a scintilla of evidence" to defeat summary judgment but must set forth "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original) (citations omitted); see Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita, 475 U.S. at 586–87). In deciding a summary judgment motion, a court resolves all factual ambiguities and draws all

3

factual inferences in favor of the non-moving party. Liberty Lobby, 477 U.S. at 255; Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005).

## DISCUSSION

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating on the basis of race, color, religion, sex, or national origin, and precludes retaliation against those who complain of such discrimination. 42 U.S.C. § 2000e-2(a)(1). When a plaintiff alleges a violation of Title VII relying on implicit rather than overt discrimination, the parties must follow a three-part framework. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252–56 (1981) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).

In a failure-to-promote case, the plaintiff must first make a prima facie showing "(1) []he is a member of a protected class, (2) []he was qualified for the job for which []he applied, (3) []he was denied the job, and (4) the denial occurred under circumstances giving rise to an inference of discrimination on a basis forbidden by Title VII." Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000) (citing McDonnell Douglas Corp., 411 U.S. at 802); see also Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002). The burden at this stage is "not onerous." Howley, 217 F.3d at 150.

Once the plaintiff establishes a prima facie case, the defendant may rebut the plaintiff's showing by "articulating a legitimate non-discriminatory reason for the employment action." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). To defeat summary judgment, the plaintiff must then produce evidence of pretext—namely, "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false." Weinstock, 224 F.3d at 42 (quoting Van Zant v. KLM Royal Dutch

Airlines, 80 F.3d 708, 714 (2d Cir. 1996)). The ultimate "question [is] whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination" such that a reasonable jury could find in the plaintiff's favor. Weinstock, 224 F.3d at 42.

A. Prima Facie Case of Discrimination

In a prior memorandum and order, this Court denied (in part) a motion to dismiss, concluding that the Amended Complaint pled a prima facie case of sex discrimination in connection with the DOL's 2011 failure to promote Moy. Moy was a man, and Lau, the chosen candidate, was a woman. There is no dispute that Moy was qualified for the Assistant District Director position, and that he possessed at least some characteristics that Lau did not. Moy had also worked for the DOL for eight months longer than Lau, and possessed an MBA in Human Resources. See Moy v. Perez, No. 15-cv-32, 2015 WL 9256991, at *2 (S.D.N.Y. Dec. 4, 2015) (citing Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015)). For the same reasons, Moy has met his prima facie case at the summary judgment stage.

B. Legitimate Non-Discriminatory Reason for the Employment Action

Once the plaintiff presents a prima facie case, the defendant may rebut the discrimination claim by articulating a "legitimate, non-discriminatory reason" for the employment action. Weinstock, 224 F.3d at 42 (citations omitted). This causes the presumption of discrimination created by the plaintiff's case to "drop[] from the picture." Weinstock, 224 F.3d 33 at 42 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510–11 (1993)). In this action, there is no dispute of material fact that the DOL proffered legitimate reasons for picking Lau rather than Moy.

First, Lau's performance evaluations were better than Moy's. (St. ¶¶ 16–26.) In

the most recent relevant performance review, Lau's supervisor gave her a rating of "Exceed," the highest rating available, in four out of five categories." (St. ¶¶ 20–25.) Moy's supervisor gave Moy that rating in only two categories. (St. ¶ 21.) When Moy told Rosado that he felt that the evaluation was unfair, Rosado met with Moy in the presence of his union representative and agreed to change one of his ratings to "Exceed." (St. ¶ 21.) Among other things, Rosado noted that Moy's time charges were excessive, his database entries were not complete and accurate, and that Moy should have been notifying complainants about the progress of his investigations. (St. ¶ 23.) Rosado told Moy she would not change his performance rating again unless his fiscal-year 2011 performance improved. (St. ¶ 22.) Moy does not contest Rosado's notes regarding his performance deficiencies, describing them as "incidental aberrations from [his] otherwise stellar job performance." (St. ¶ 23.) Subsequently, Moy's performance ratings declined further. (See Lillywhite Decl. Ex. T, ECF Nos. 66-16, 66-17.) In the most recent evaluation from his supervisor, David Ann, Moy was rated as "minimally satisfactory." (St. ¶ 26.)

Moy and Lau had similar tenures at the DOL. Moy joined the office in April 2000 and Lau joined in December 2000. (St. ¶¶ 14–15.) However, Lau had previously investigated wage-and-hour violations at the New York State Department of Labor, where she worked for two years as a Labor Standards Investigator. (St. ¶¶ 14–15.) Moy did not have prior experience investigating violations of the labor laws. (St. ¶ 14.)

Moy and Lau both had leadership experience. Moy was a team leader for the New York District Office's Rapid Assistance in Chinese Hotline ("REACH") Team. (St. ¶ 38.) Lau was a team leader for the Nail Salon Team, which conducted community outreach and education to nail salons within the office's jurisdiction. (St. ¶ 39.) Both Moy and Lau had

6

degrees in Human Resources. Moy's degree was an M.B.A.; Lau's was a B.A. (St. ¶ 40.)

It is unclear whether Lau or Moy worked more efficiently. The DOL notes that Lau submitted approximately 50% more wage-and-hour cases, and recovered 50% more back wages than Moy. (St. ¶¶ 35–36.) However, those statistics cannot completely depict the amount of work each candidate performed on each case, and several of Lau's cases had been recently transferred from another investigator. Several cases assigned to Moy—such as non-FLSA actions under the Davis-Bacon law, H1B visas, and the Family Medical Leave Act—also did not involve the same statistics as typical back-wage cases. (St. ¶ 36.)

Rosado believed that Lau was better at managing her co-workers. (St. ¶ 45.) Rosado found that Lau was "productive," "work[ed] independently," required "little to no supervision," had "good people skills," and adequately mentored and assisted in training new investigators. (St. ¶ 45.) Rosado observed that Moy had some difficulty getting along with coworkers and a negative attitude about management. (St. ¶ 44.) Ference agreed with Rosado's assessment, concluding that Moy would have difficulties performing as a manager because he lacked an "ability to connect" or "relate" to other people. (St. ¶ 47.) Ference stated that during the interview, Moy seemed "[h]aught[y]" and somewhat arrogant. (St. ¶ 47.)

There is no dispute of material fact that the DOL had "legitimate, non-discriminatory reasons" for promoting Lau rather than Moy, such as Lau's performance-related and interpersonal skills. (E.g., St. ¶ 45.) Accordingly, this Court proceeds to the third step of the McDonnell Douglas framework.

C. Whether the Proffered Rationale was Mere Pretext

At the third stage, "the plaintiff must [] come forward with evidence that the

7

defendant's proffered, non-discriminatory reason is mere pretext." Weinstock, 224 F.3d at 42. "The plaintiff must produce not simply some evidence, but sufficient evidence from which a jury could reasonably conclude that discrimination was the real reason for the adverse employment action, and the reasons proffered by the [defendant] were false. Weinstock, 224 F.3d at 42 (internal quotation marks omitted). The core allegation in Moy's case is that his credentials were so obviously superior to Lau's that an inference of sex discrimination arises. (See, e.g., Moy Decl. at ¶¶ 4–11.)

    i. <u>Disparity in Qualifications</u>

To create an inference of pretext, a Title VII plaintiff may proffer evidence of a "strength of a discrepancy in qualifications ignored by an employer." <u>Byrnie v. Town of Cromwell, Bd. of Educ.</u>, 243 F.3d 93, 103 (2d Cir. 2001). In <u>Byrnie</u>, the Second Circuit explained the standard for assessing such evidence:

> [A]n employer's disregard or misjudgment of a plaintiff's job qualifications may undermine the credibility of an employer's stated justification for an employment decision. At the same time, the court must respect the employer's unfettered discretion to choose among qualified candidates.
>
> When a plaintiff seeks to prevent summary judgment on the strength of a discrepancy in qualifications ignored by an employer, that discrepancy must bear the entire burden of allowing a reasonable trier of fact to not only conclude the employer's explanation was pretextual, but that the pretext served to mask unlawful discrimination. In effect, the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.

<u>Byrnie</u>, 249 F.3d at 103 (internal citations, quotations and quotation marks omitted).

  <u>Byrnie</u> applied this standard to a school's decision to hire a female art teacher with a B.A. in Fine Arts, 4 years' full-time experience, and 8 years' part-time experience over a

male art teacher with a B.A. and M.A. in Art Education, more than 21 years' experience as an art teacher, and six years' additional experience as a substitute teacher. The Court of Appeals concluded that while the plaintiff was clearly "well-qualified" for the teaching position, nothing in the record suggested his competitor was "unqualified," or that it was "unreasonable" for the search committee to offer her the position. Byrnie, 243 F.3d at 103. Accordingly, summary judgment would have been warranted based upon the applicants' qualifications alone. See Byrnie, 243 F.3d at 103 ("Byrnie's credentials on their own could not meet this weighty burden.") But the Court of Appeals reversed nonetheless, noting that there were procedural "irregularities" in the search committee's conduct that raised questions of credibility; and that the search committee had to alter the formal requirements for the position in order to hire the plaintiff's competitor. Byrnie, 243 F.3d at 104.

The disparity in qualifications Moy alleges does not approach the disparity found insufficient, standing alone, to survive summary judgment in Byrnie. Indeed, the Court of Appeals rejected the proposition Moy advances—that because he had a graduate degree where his competitor had only a B.A., he was obviously more qualified for the position. See Byrnie, 249 F.3d at 103. There is no dispute that Rosado and Ference agreed that Lau would be a good pick for the position, and were not impressed with Moy's performance. (St. ¶¶ 44–48.) While Lau had several months' less experience at DOL than Moy, she also had two years prior experience at the New York State Department of Labor. (St. ¶ 15.) At the end of the interview process, Moy was not even among the top two candidates—Lau and Rosenman. (St. ¶ 11.) While Moy asserts that Rosado ignored Moy's qualifications, counsel could not point to evidence supporting that proposition at oral argument. (See Transcript of September 8, 2016

9

Oral Argument ("Tr."), at 20–22.)

The factors that led the Court of Appeals to require a trial in Byrnie are not present here. There is no evidence Rosado or others had to "relax" the qualifications for the Assistant District Director position in order to accommodate Lau. Cf. Byrnie, 243 F.3d at 104. Moy's contention that Rosado made Lau appear more productive by transferring a class of high-profile cases to her is belied by the record, which indicates that six of the seven cases were transferred to Lau by someone else. (See Lillywhite Decl., Ex. DD, ECF No. 66-28; St. ¶ 21.). Counsel could not articulate any contradictory evidence, other than Moy's speculation that Rosado was somehow responsible because she was Lau's supervisor. (See Tr. at 12–13.)

Moy also contended that Lau's application contained falsehoods. First, Moy faults Lau (for whom English is a second language)[3] for using the phrase "have been" rather than "had been" to describe her role on the leader of the New York District Office's Nail Salon Team, which was recently disbanded. But Moy's counsel acknowledged at oral argument that Rosado knew the team had been disbanded, so there was no basis for any misunderstanding. (See Tr. at 18.) Moy also faults Lau for checking a box indicating she wrote a graduate-level "thesis, practicum, or dissertation (or equivalent)." (See Application of Debbie Lau, Moy Decl. Ex. 28.) Moy does not explain why doing so was wrong.

Nor is there any evidence of procedural "irregularity" in the selection process. See Byrnie, 243 F.3d at 104. Moy claims Rosado could not consider Lau's performance at interviews, and should only have considered paper credentials. But it became clear at oral argument that Moy's counsel was conflating the initial screening process for applications—at

---

[3] (See Lillywhite Decl., Ex. F, April 25, 2016 Deposition of Debbie Lau, 108:3–109:11.)

10

which point only paper credentials could be considered—with the ultimate selection process—which included an interview. (See Tr. at 21–23; Okoronkwo Decl. Ex. 16, May 24, 2016 Deposition of Erin McKenna, ECF No. 67-16, at 63:9–65:16.)

### ii. Other Allegations

In <u>Byrnie</u>, the Court of Appeals noted that a legally insufficient disparity in qualifications, when combined with other evidence, could create a dispute of material fact. <u>Byrnie</u>, 243 F.3d at 104. Accordingly, this Court also examines Moy's allegations in the aggregate, to determine whether they might be sufficient to suggest pretext.

Moy notes that three DOL employees wrote complaints alleging a discriminatory climate at the DOL.[4] But even ignoring the speculative nature of such complaints, they are inadmissible hearsay. <u>Gelin v. Geithner</u>, No. 06-cv-10176, 2009 WL 804144, at *23 n.15 (S.D.N.Y. Mar. 26, 2009) (statements in a discrimination complaint are speculation absent personal knowledge); <u>Delaney v. Bank of Am. Corp.</u>, 908 F. Supp. 2d 498, 506–07 (S.D.N.Y. 2012), aff'd, 766 F.3d 163 (2d Cir. 2014) (draft EEO charge is hearsay). And when Moy's counsel questioned one of these complainants at deposition about a statement in her EEO affidavit—that "people [were] saying" that the "next [Assistant District Director position would] go to a female of Asian descent"—that witness recanted. She explained that she was speculating that it "made sense" for the DOL to hire an Asian-American woman from outside of the office because two of the Assistant District Directors were non-Asian-American men from the District Office. (Compare Okoronkwo Decl., Ex. 10, with Lillywhite Decl. Ex. AA, at 110:12–111:5.)

Moy asserts Rosado's hiring practices suggest gender discrimination because she

---

[4] One memorandum refers to race discrimination, not sex discrimination. (See Lillywhite Decl., Ex. Y.)

11

promoted "only women and no men" in the months immediately prior to the 2011 promotion. Looking outside this narrow period, however, Rosado's overall employment decisions were nearly sex-neutral—she promoted eight men and ten women. Rosado promoted 3 men and 3 women as the Assistant District Director of the Brooklyn Office. (St. ¶ 49.) When she became the District Director in the New York Office, she hired or promoted two men and three women to the position of Wage and Hour Investigator; one man and one woman to Wage and Hour Assistant; and one woman to Community Outreach Specialist. (St. ¶ 51.) She also promoted one man and two women to the Assistant District Director position. (St. ¶ 52.) And when she was promoted to Deputy Regional Administrator on February 5, 2015, she filled her own position with a man. (St. ¶ 53.) The lack of a statistical bias in her choices creates no inference of sex discrimination.

Finally, Moy asserts Rosado favored Lau because Lau once bought used clothing from Rosado. The clothing transaction is Moy's only apparent basis for believing Lau and Rosado were "friends." (St. ¶¶ 54–56, Moy Decl. ¶ 19.) Even if they had been, favoritism based on friendship does not violate Title VII. See Mullins v. Consol. Edison Co. of N.Y., Inc., No. 13-cv-6800, 2015 WL 4503648, at *10 (S.D.N.Y. July 22, 2015).

In sum, Moy has not proffered evidence suggesting any discriminatory pretext in connection with the DOL's failure to promote him, aside from his own feeling that he was more deserving of the promotion. And "a plaintiff's feelings and perceptions of being discriminated against do not provide a basis on which a reasonable jury can ground a verdict." Chen v. City Univ. of N.Y., 805 F.3d 59, 75 (2d Cir. 2015) (internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, the Department of Labor's motion for summary judgment is granted and this action is dismissed. The Clerk of Court is directed to terminate all pending motions and mark this case as closed.

Dated: September 21, 2016
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.